UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
JULIANN SALERNO,                                            :
                                                            :
                              Plaintiff,                    :
                                                            :     05 Civ. 7293 (SCR)
        -v.-                                                :
                                                            :     **OPINION AND ORDER**
TOWN OF BEDFORD, NY,                                        :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------x

Stephen J. Riebling, Jr., Riebling, Proto & Schmidt, LLP, White Plains, NY, for plaintiff.

Lance H. Klein and Edward J. Phillips, Keane & Beane, P.C., White Plains, NY, for defendant.

GERARD E. LYNCH, District Judge:

  Plaintiff Juliann Salerno, a police officer employed by the defendant Town of Bedford, New York ("the Town"), brought this action alleging gender and age discrimination in connection with a disciplinary charge brought against her by the Town's Chief of Police. Defendant moved for judgment on the pleadings dismissing the original complaint, plaintiff cross-moved to amend her complaint, and defendant opposed the motion to amend, arguing that the new complaint was equally defective. Defendant's motion to dismiss the original complaint will be granted, and plaintiff's motion to amend her complaint will be denied, without prejudice to renewal of that motion on the conditions set forth below.[1]

---

[1] Due to an extreme backlog in the White Plains Division of this Court, this matter was recently assigned by the Chief Judge to the undersigned judge, solely for purposes of deciding the instant long-pending motion, with the gracious consent of the Honorable Stephen C. Robinson, United States District Judge, to whom this case is otherwise assigned. The case

## BACKGROUND

The facts set forth below are drawn from the allegations in plaintiff's proposed amended complaint, which are accepted as true for purposes of deciding this motion.

Plaintiff Juliann Salerno is a police officer employed by the defendant Town. In January 2003, when she was 43 years old, Thomas A. Newman, the Chief of Police, notified Salerno in writing that her past use of sick time was of concern, and that her use of sick time in 2003 would be closely monitored. In April 2003, a second notice recited that she had taken more than 12 days of sick time in the first quarter of the year, and reiterated the warning that she was being monitored. Yet another such letter, noting a total of 23 sick days, was sent in November 2003. Finally, in February 2004, formal disciplinary charges were brought against Salerno, charging her with incompetence based on her allegedly excessive absences.

At the hearing on these charges, it was learned that charges for abuse of sick leave had been brought only against Salerno, the Town's only female full-time police officer, and a male officer who was the Town's oldest officer, even though younger male officers had used an equal or greater amount of sick leave during the period in question. After the hearing, Chief of Police Christian Menzel, who had replaced Newman, wrote to Salerno withdrawing the charges. No disciplinary action was ever taken against Salerno.

Notably, plaintiff's complaint specifically alleges that the dispute about sick leave was part of a broader conflict between the Town and its police officers, the backdrop of which was a a collective bargaining agreement that provided for unlimited sick time for officers.

---

remains assigned to Judge Robinson for all other purposes, with the exception of any renewed motion to amend the complaint as described below.

Specifically, during this time period,

> there developed a growing concern within the Town and Department about officer use of sick time. The Town attempted and failed to unilaterally change the agreement. Ultimately, a policy outside of the agreement was developed, and through the use of disciplinary letters and memos officers were warned about sick time use.

(Am. Compl. ¶ 19.) This informal "policy" was apparently a failure, in that the evidence at plaintiff's hearing disclosed that "no one in the department knew what exactly the policy was with respect to excessive sick leave, or how to properly enforce the policy." (Id. ¶ 24.)

Salerno subsequently filed a complaint with the Equal Employment Opportunity Commission in August 2004, and received a right-to-sue letter in May 2005. She then instituted this action by filing, pro se, a form complaint, in August 2005. The Town answered the complaint, and then moved for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P. Salerno, at that point represented by counsel, countered by cross-moving to amend her complaint. The Town opposed the motion, arguing that the new complaint also failed to state a claim. Salerno did not file a reply to defend her cross-motion, and made no further effort to counter defendant's attack on her complaint.

## DISCUSSION

**I.    Motion to Dismiss the Original Complaint**

The original complaint asserted claims for age discrimination under the Age Discrimination in Employment Act, 129 U.S.C. § 621 ("ADEA"), gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and violation of plaintiff's constitutional right to equal protection in violation of 42 U.S.C. § 1983. The Town moved to dismiss the Title VII and ADEA claims on the ground that plaintiff

failed to allege an adverse employment action, a required element of an employment discrimination claim under both statutes, and moved to dismiss the § 1983 claim on the ground that plaintiff had not alleged that her rights had been violated pursuant to a "policy or custom," as required for municipal liability under § 1983.

The points were well taken. An adverse employment action is a basic prerequisite of an employment discrimination claim under both Title VII, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and the ADEA, Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir. 1998). An adverse employment action is a "materially adverse change in the terms and conditions of employment." Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (citation and internal quotation marks omitted). Examples of materially adverse actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, and significantly diminished material responsibilities." Sanders, 361 F.3d at 755 (citation and internal quotation marks omitted). Salerno, however, alleged only that disciplinary charges had been brought against her – charges that were ultimately withdrawn, and that resulted in no discipline or other adverse consequence. But the mere filing of disciplinary charges against an employee, without more, does not constitute an adverse employment action. Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001).

Further, municipalities such as the Town cannot be held liable under § 1983 for the unconstitutional actions of its employees on a theory of respondeat superior. Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 128 (2d Cir. 2004). Such liability only attaches where the injury is inflicted by the municipality's "policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). Salerno alleges no municipal policy or custom but only that Chief Newman took actions against her.

Although there are circumstances under which Salerno's claim might nonetheless have merit, see Pembaur v. City of Cincinnati 475 U.S. 469, 480 (1986), the Court need not finely parse the allegations of the complaint to see whether they could somehow be construed, in light of the liberal treatment of pro se pleadings, as stating claims under these or other sources of law, because plaintiff has not sought to defend her pleading, and thus must be construed as having abandoned it. Now represented by counsel, plaintiff instead proffers a new pleading, seeking leave to amend her complaint to substitute new, professionally-drafted allegations. The motion to dismiss the original complaint is thus granted.

**II.     Motion to Amend**

The standard for granting leave to amend a pleading is liberal. Leave to amend should be "freely given when justice so requires." Rule 15(a), Fed. R. Civ. P. This is particularly so where a plaintiff seeks to amend a pro se pleading. As the Second Circuit has held, "Certainly the court should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). It cannot be said that plaintiff's original complaint, even if defective as pleaded, is devoid of any indication of a valid claim. The allegations are sparse, and suggest at a minimum that plaintiff was singled out for charges that were not brought against similarly-situated younger male employees. As plaintiff is now represented by counsel, and seeks to replace that bare-bones, lay-drafted, fill-in-the-blanks form pleading with a

5

professionally-drafted complaint, every presumption should be indulged in favor of permitting plaintiff to file her amended complaint.

But the liberality of Rule 15(a) is not without limit. Leave to amend should not be granted where a review of the proposed amended complaint discloses that amendment would be "futile" because the amended complaint itself would have to be dismissed for failure to state a claim. Hunt v. Alliance North Am. Gov't Income Trust, Inc., 159 F.3d 723, 728 (2d Cir. 1998). Defendant argues that such is the case here because the proposed amended complaint is defective with respect to each of the claims asserted. Accordingly, the Court turns to that complaint, addressing its claims as if leave to amend had been granted, the complaint filed, and a motion to dismiss pursuant to Rule 12(b)(6) made by the defendant.

### A. The Proposed Amended Complaint

After setting forth the factual allegations described above, the proposed amended complaint alleges eight specific causes of action. All of the claims, however, reduce to two specific allegations of discriminatory conduct – maintenance of a hostile work environment and denial of "promotional opportunities" – allegedly taken on the basis of two prohibited grounds: age and gender. The eight claims are distinguished by the source of law on which they are based: 42 U.S.C. § 1981 (claims 1 and 2); Title VII (claims 3 and 4); the ADEA (claims 5 and 6); and the New York State Human Rights Law ("NYSHRL") (claims 7 and 8). The specific paragraphs set forth under each of these eight headings are essentially identical.

### B. Technical Defects

The draftsmanship of the complaint leaves certain claims vulnerable to dismissal on technical grounds. For example, claims 1 and 2 purport to be based on 42 U.S.C. § 1981. But

that statute, which guarantees to all persons "the same right . . . to make and enforce contracts . . . as is enjoyed by white persons," protects employees against race discrimination, and does not apply to claims of gender or age discrimination. Runyon v. McCrary, 427 U.S. 160, 170-71 (1976); Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998). Nowhere in the complaint does Salerno allege race discrimination; throughout the complaint, including in the specific paragraphs devoted to § 1981, she alleges discriminatory actions only "on the basis of plaintiff's gender and age." (Am. Compl. ¶¶ 28, 34.) Accordingly, plaintiff's first and second causes of action do not state claims on which relief can be granted.[2]

Similarly, the cut-and-paste repetitiousness of the claims results in plaintiff's alleging Title VII claims based on age as well as gender, and ADEA claims based on gender as well as age. Title VII does not prohibit discrimination based on age, and the ADEA has nothing to do with sex discrimination. Accordingly, the claims of age discrimination in plaintiff's third and fourth causes of action, and of gender discrimination in her fifth and sixth claims, fail to state

---

[2] It is possible that plaintiff mistakenly relied on § 1981 rather than on 42 U.S.C. § 1983, which was one of the bases of plaintiff's original pro se complaint. Given the pains taken by the proposed amended complaint to allege that the actions taken against plaintiff were based on a municipal policy or practice (see Am. Compl. ¶¶ 27-29, 33-35) – the absence of which was the primary basis for defendant's attack on the § 1983 claims in the original complaint (D. Mem. at 9-10) – it seem especially plausible that plaintiff intended to bring a cause of action under § 1983. As the current complaint was drafted by counsel, rather than by a lay person acting pro se, however, the Court may not redraft the complaint and assess the propriety of other potential legal claims not actually presented. See Haines v. Kerner, 404 U.S. 519, 520 (distinguishing between complaints drafted pro se, which are held to "less stringent standards," and "formal pleadings drafted by lawyers"). This course seems especially prudent where the plaintiff – while pleading under the auspices of § 1981 – alleges the existence of a municipal policy relevant to § 1983 but does not also allege a deprivation of a specific constitutional right. See West v. Atkins, 487 U.S. 42, 48 (1988) (requiring plaintiff to allege a violation of a constitutional right). The Court thus expresses no view on whether any of the allegations in the proposed amended complaint adequately allege a violation of § 1983.

claims on which relief can be granted.

  C.  Substantive Issues

Defendant asserts two more substantial objections that go to the remaining claims in the proposed complaint. First, defendant asserts that plaintiff failed to exhaust her administrative remedies with respect to the hostile work environment and failure to promote allegations. Because a plaintiff may bring an employment discrimination action under Title VII or the ADEA only after filing an administrative charge with the EEOC or an authorized state or local agency, 42 U.S.C. § 2000e-5(3) (Title VII); 29 U.S.C. § 626(d), 633(b) (ADEA), failure to do so would defeat her claims. See Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000). Second, defendant argues that the complaint fails adequately to allege a hostile environment or failure to promote claim, or to assert any other adverse employment action. Because the substantive standards for employment discrimination claims under Title VII, the ADEA, the NYSHRL, and, for that matter § 1983,[3] are identical, see Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003) (ADEA claims); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (NYSHRL), this argument, if correct, would doom to futility all of plaintiff's employment discrimination claims. The two arguments, moreover, intertwine in a way that complicates plaintiff's burden.

  1.  Failure to Exhaust

Plaintiff's charge to the EEOC cites as the complained-of discriminatory acts only the

---

[3] If plaintiff had brought a cause of action under § 1983, that claim would also join this company because "[i]n analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, [] the burden-shifting framework for Title VII claims [applies]." Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998), citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n. 1(1993); Sorlucco v. New York City Police Dep't, 888 F.2d 4, 7 (2d Cir. 1989).

filing of disciplinary charges for abuse of sick leave described above. (Phillips Decl. Ex. E.) Defendant accordingly claims that plaintiff's hostile work environment and failure to promote charges were not properly presented to the agency, and therefore must be dismissed.

However, a plaintiff may litigate not only those claims that are specifically included in her administrative charge to the EEOC or comparable state agency, but also any claim that is "reasonably related to" the allegations in that charge. Butts v. City of New York Dept. of Housing Preservation and Development, 990 F.2d 1397, 1401 (2d Cir. 1993); Malarkey v. Texaco, Inc., 983 F.2d 1204, 1208 (2d Cir. 1993). Plaintiff accordingly would presumably argue that the claims she now seeks to bring via the proposed amended complaint are "reasonably related" to the unfair discipline charge she presented to the EEOC, and therefore are fair game for litigation.[4]

Defendant, anticipating this argument, contends that the hostile environment and promotion claims are not "reasonably related" to the claim advanced in the administrative charge. And indeed, courts in other circumstances have rejected the idea that hostile environment claims, which assert that an employee's working environment has been poisoned by discriminatory harassment to the point of being intolerable, and claims of unfair discipline or other concrete and specific adverse employment actions, are reasonably related. See, e.g.,

---

[4] The Court can only speculate about plaintiff's possible responses to the arguments made in defendant's opposition to her motion to file an amended complaint. Remarkably, plaintiff failed to file a reply brief responding to those arguments, none of which (with the exception of the "policy or practice" argument that is not relevant to most of defendant's objections) were anticipated in plaintiff's motion papers. Rather than assume that plaintiff has abandoned her motion, however, the Court will attempt to deal with defendant's arguments on the merits, considering any plausible arguments in favor of plaintiff's motion that can be deduced from the record.

Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002); Butts, 990 F.2d at 1403; Ige v. Command Secs. Corp., 2002 WL 720944, at *6 (E.D.N.Y. Mar. 12, 2002); Ebanks v. Neiman Marcus Group, Inc., 414 F. Supp.2d 320, 332 (S.D.N.Y. Feb. 3, 2006).

     Plaintiff's situation is arguably different, however, from those addressed in the cases just cited.  A careful reading of the complaint discloses that plaintiff's hostile environment and loss of promotional opportunities claims are not distinct from, but rather are identical to, the claim of discriminatory disciplinary action set forth in the administrative charge and plaintiff's original complaint.  Although plaintiff alleges in general terms that she was subjected to "harass[ment] and abuse" and to a "pattern of harassment" that extended "from on or about January 2002 until [October 27, 2006, the date of the filing of the proposed amended complaint]" (Am. Compl ¶ 41), and elsewhere that she "was harassed based upon her age and gender beginning on or about January 2003 and continuing up until her work related injury in May of 2005 " (id. ¶ 6), the proposed complaint nowhere refers to a single instance of mistreatment of Salerno other than the written memoranda addressing her alleged abuse of the sick time policy (id. ¶¶ 13-15) and the ultimate filing of disciplinary charges based on those allegations (id. ¶ 16).  Nowhere in the complaint is there any allegation that Salerno suffered from any age- or gender-related adverse conduct of any kind: no sexist or agist remarks, no unwanted sexual advances, no discriminatory work assignments, no exclusion from any departmental functions, indeed, no unpleasant actions of any sort whatsoever that might have indicated to a reasonable person that women or older workers were not welcome in the department.  The claims of hostile environment and loss of promotional opportunities thus would appear to be based on the exact same conduct that was the basis of the EEOC charge.

As the Second Circuit has held, federal claims are "reasonably related" to conduct alleged in an EEOC charge where "(1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Alfano, 294 F.3d at 381 (internal quotation marks omitted).  Notably, all of these examples focus on the relationship between the *facts* alleged in the EEOC charge and those asserted in the federal complaint, not on the similarity or dissimilarity of the *legal theories* asserted by the plaintiff in the administrative and judicial complaints.  This makes sense. As courts have frequently noted, administrative charges in employment discrimination cases are frequently drafted by lay persons, who lack the sophistication to characterize the treatment they complain of in technical legal terms.  See Butts, 990 F.2d at 1402; Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (the relevant analysis focuses "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving.")  Government officials who are professionally charged with investigating discrimination claims and enforcing immigration laws, however, can be expected to recognize available legal claims that may be founded on the facts presented to them.  Conversely, even lay persons can be expected to set forth all of the episodes of discrimination of which they complain, and administrators cannot be expected to hypothesize and investigate factual incidents that have not been disclosed to them.

Here, it appears that the factual bases for plaintiff's present complaints of hostile environment and loss of promotions are exactly the same formal and informal charges of sick-

leave abuse that were presented to the EEOC.[5] If Salerno's charge did not specifically utilize the words "hostile work environment" or "loss of promotional opportunities," neither did it specifically invoke the terminology of "adverse employment action" that would be naturally associated with discriminatory disciplinary action. She merely reported what had happened to her, which was exactly the same "monitoring" memos and disciplinary proceeding that are cited in the original and proposed amended complaints. The possibility that such incidents would constitute discrimination on the basis of hostile work environment, or any other potential legal theory, would thus would fall as completely within the expected EEOC investigation as the more obvious claim of discriminatory adverse employment action. Accordingly, at least to the extent the Court correctly interprets the claims made in proposed amended complaint, the plaintiff has properly exhausted her administrative remedies with respect to those claims.

2. Sufficiency of the Allegations

However, the very interpretation that saves the complaint from futility on grounds of failure to exhaust appears to defeat the complaint on the more fundamental ground that restating the *theory* of plaintiff's original complaint does not solve the basic problem that the allegation of nothing more than the filing of disciplinary charge later withdrawn does not state a claim of employment discrimination.

A hostile work environment claim exists when an employee's "workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to

---

[5] To the extent that Salerno alleges continuing violations up to the date that she left active service due to disability, or even to the date of the filing of the motion to amend her complaint, nothing in the proposed amended complaint suggests that the incidents complained of differed in manner from the disciplinary actions specifically alleged in the complaint. Any such incidents would thus also fall within the "reasonably related to" standard defined in Alfano.

alter the conditions of the victim's employment and create an abusive work environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). To determine whether this standard is met, courts examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Id. at 23. Isolated or unique incidents of harassment, unless "extremely serious," do not suffice to establish a hostile work environment. Clark County School Dist. v. Breeden, 532 U.S. 268, 271 (2001); Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000).

Under the pleading standards of the Federal Rules of Civil Procedure, discrimination claims need not be exceedingly detailed. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002).[6] Here, the Court need not go to great lengths to determine whether Salerno's general allegations of a pattern of harassment, standing alone, "give[] respondent fair notice of the basis for [her] claims," id. at 514, because in the context of this complaint, and in the broader context of this litigation, Salerno has not simply stated a generalized claim that she was subjected over the years to a general pattern of sex- or age-based harassment that amounted to a hostile work environment. Rather, she has quite specifically alleged very particular acts (the "monitoring" memos and the filing of the disciplinary charge), which the general allegations specifically reference. Thus, after the factual allegations setting forth the receipt of the monitoring memos and the filing of the disciplinary charge, the complaint turns to the specific causes of action.

---

[6] Swierkeiwicz continues to be good law, even after the Supreme Court's reconsideration of the Rule 8 pleading standard in Bell Atlantic Corp. v. Twombly, 550 U.S. ----, ----, 127 S.Ct. 1955, 1973-74 (2007). See Erickson v. Pardus --- U.S. ----, 127 S.Ct. 2197 (2007) (per curiam); accord Boykin v. Keycorp., 521 F.3d 202, 213-14 (2d Cir. 2008).

Each such claim begins with the allegation that the Town delegated to Chief Newman "policy making powers with respect to sick time as evidenced by the testimony from the evidentiary hearing." (Am. Compl. ¶ 27, 33, 40, 47, 54, 61, 70, 79.) The claims of hostile work environment then go on to allege harassment and abuse "by threatening the plaintiff that she was abusing her sick time and threatening her with the loss of her job, loss of promotional opportunities within the department, and all of the benefits, privileges, terms and conditions of plaintiff's employment . . . by engaging in a pattern of harassment against plaintiff." (Id. ¶¶28, 41, 55, 71.) Although the claim of harassment is somewhat circular in that it charges that plaintiff was harassed by being threatened with discipline by being harassed, it is all but impossible to read this allegation as based on anything other than the threats in the monitoring memoranda and the disciplinary charge that Salerno would be fired or in some way disciplined for her alleged violations of the sick leave policy.

Such allegations do not state a claim for hostile work environment. Allegations of negative job evaluations or excessive reprimands are insufficient to establish a hostile environment claim. Weeks, 273 F.3d 76 at 86. Here plaintiff appears to allege nothing more than three memoranda criticizing her for allegedly excessive use of sick leave, followed by a disciplinary charge that was withdrawn – apparently precisely because the Town determined that younger or male officers with similar records had not been charged. (Am. Compl. ¶ 23.) Applying the standards set forth in Harris, 510 U.S. at 21, it is evident that such a failed disciplinary effort, which consisted of a handful of related incidents spread over a year and constituted a single, isolated course of conduct, does not involve severe mistreatment, especially insofar as it merely invoked a fair hearing process that led to the revocation of the charge, and

was neither physically threatening nor humiliating nor alleged to have created the kind of discriminatory atmosphere that would undermine the plaintiff's job performance.  To the contrary, Salerno evidently continued to "perform[ ] her job competently and satisfactorily" "[t]hroughout her years on the police department" until an unrelated job injury led to her being placed on disability leave.  (Am. Compl ¶ 12.)[7]

Plaintiff's claim of discriminatory "loss of promotional opportunities" fares no better than her claim of hostile work environment.  Nowhere does Salerno claim that she was denied any particular promotion to which she might otherwise have been entitled.  Instead, the allegations under the heading of "loss of promotional opportunities" are identical to those set forth above with respect to the claims of hostile work environment (compare Am. Compl. ¶¶ 34, 48, 62, 80 with id. ¶¶28, 41, 55, 71.)  In each case, plaintiff alleges not that she was in fact *denied* any promotion or "promotional opportunity" whatsoever, but merely that she was "*threaten[ed] . . . with . . .* loss of promotional opportunities within the department" when she was "threaten[ed] . . . that she was abusing her sick time."  (Id.)  Actual claims of failure to promote require allegations that an employee "applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally

---

[7] It is noteworthy as well that plaintiff's own allegations specify that the Town's effort to monitor and discipline officers' sick leave time was not a pretext for harassing older or female officers, but was a deliberate and concerted (if vague and ill-conceived) effort to revise the generous sick leave policies embodied in the officers' collective bargaining agreement. (Am. Compl. ¶¶ 19-20, 24.)  This, of course, does not mean that the actions were not discriminatory. If the Town sought to impose a new policy on all officers by instituting discipline against a few selected officers, but deliberately chose female or older officers as its exemplary cases, that would indeed be discriminatory conduct.  But it is less than clear that receiving a disciplinary notice in such a context, without more, could plausibly be seen as creating a hostile work environment on the basis of a protected characteristic.

requested promotion," Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998), and that she or he "applied and was qualified for a job for which the employer was seeking applicants." Williams v. R. H. Donnelly Corp., 368 F.3d 123, 126 (2d Cir. 2004).  Salerno does not even claim that she requested or desired promotion in the general way held insufficient in Brown, nor does she allege that she was qualified for any higher position than she already held in the department.  Once again, her claim seems to be that simply that she was threatened with disciplinary action.  Dressing up that claim, which does not state a claim for a discriminatory adverse employment action, as a claim for an alleged threatened loss of potential promotions, does not turn it into a viable employment discrimination claim.

Accordingly, plaintiff's amended complaint does not amplify or clarify the factual allegations of the original complaint in any way that converts her previous, insufficient pro se complaint into a legally sufficient claim of employment discrimination under any of the sources of law plaintiff relies on.

    D.    <u>Remedy</u>

The above analysis makes clear that the proposed amended complaint does not state viable claims for relief, and that the motion to amend must be denied on grounds of futility.  Ordinarily, the denial of plaintiff's motion would end the case.  Salerno has already had two bites at the apple.  When her first pro se pleading was challenged by a motion to dismiss, she declined to defend it, but instead sought to file an amended complaint, drafted by counsel.  When defendant challenged that complaint, too, as inadequate, she once again failed to defend the complaint by failing to file a reply brief addressing defendant's arguments.  Under the circumstances, the Court has little reason to expect that plaintiff will be able to remedy the

16

defects discussed above.

However, the Court is cognizant that the proposed amended complaint as drafted remains ambiguous. Although the amended complaint refers to no harassing conduct apart from the failed disciplinary effort, it does recite a general allegation of a pattern of harassment purportedly extending well beyond the time period during which the sick-leave dispute was on-going. It is thus unclear whether plaintiff intended to allege, and can still allege, additional acts of mistreatment that could state a claim against defendant Town for maintaining a hostile work environment for female or older officers.

Accordingly, plaintiff will be given one more opportunity to state any such additional allegations, if that was indeed her intention. If Salerno's intention was and remains simply to seek damages and other relief, based on the theories described in the amended complaint, for the filing of the monitoring memoranda and the withdrawn disciplinary charge, her proper course of action is either to accept or to appeal the present Order. If, however, the Court misinterprets her complaint, and she intends to assert some broader pattern of sex- or age-based hostile environment discrimination, she may submit a supplementary proposed amended complaint containing such allegations. Moreover, because such allegations would apparently constitute *new* claims not included in Salerno's EEOC charge, should such a supplementary proposed amended complaint be submitted, it should be accompanied by a memorandum of law explaining how the allegations of the complaint establish any required exhaustion of remedies, as well as why the amended allegations establish a hostile work environment within the standards described above.

## CONCLUSION

Accordingly, for the reasons set forth above, defendant's motion to dismiss the original complaint is granted, and plaintiff's cross-motion to amend her complaint is denied, without prejudice to renewal of that motion, provided that plaintiff submits a renewed motion, including a substitute proposed amended complaint and a memorandum of law, on or before January 6, 2009. Extensions of this deadline will not be granted absent extraordinary circumstances.

SO ORDERED.

Dated: New York, New York
       December 3, 2008

_____
GERARD E. LYNCH
United States District Judge